```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AARON SAVAGE, pro se,                    :
                                         :
                        Plaintiff,       :
                                         :          MEMORANDUM AND ORDER
          -against-                      :          13-cv-0696 (DLI)(LB)
                                         :
BEIERSDORF INC.,                         :
                                         :
                        Defendant.       :
----------------------------------------------------------x
```
**DORA L. IRIZARRY, Chief Judge:**

On December 10, 2012, *pro se* plaintiff Aaron Savage ("Plaintiff") commenced the instant action against defendant Beiersdorf Inc. ("Defendant") in the Supreme Court of the State of New York, County of New York, asserting claims of negligence, negligent misrepresentation, false advertising, and failure to warn due to injuries he sustained after using Defendant's body wash gel. (*See* Complaint ("Compl."), attached to Notice of Removal, Dkt. Entry No. 1.) On January 8, 2013, Defendant removed the matter to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. (*Id.*) Defendant then moved to dismiss the instant action in its entirety pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Motion to Dismiss, Dkt. Entry No. 4.) This Court granted Defendant's motion to dismiss without prejudice and with leave for Plaintiff to file an amended complaint correcting the deficiencies noted by the Court. (*See* September 30, 2013 Order Granting Motion to Dismiss ("September 30, 2013 Order"), Dkt. Entry No. 21.)

On November 4, 2013, Plaintiff filed an amended complaint sounding in negligence and strict products liability. (*See* Amended Complaint ("Am. Compl."), Dkt. Entry No. 22.) Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes and cross-moves for summary judgment. For the reasons set forth below, Defendant's motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.

## BACKGROUND

Plaintiff purchased Nivea For Men Cool Body Wash with menthol ("the Nivea product") from a Walgreens store in Elmhurst, New York in March 2011. (Deposition of Aaron Savage ("Pl. Dep.") at 30:15-17, Exhibit G, Dkt. Entry No. 80.) Plaintiff claims that, several weeks after first bathing with the Nivea product, he experienced a severe burning sensation in his genital area. (*Id*. at 40:7-41:3, 42:5-7.) He also claims that the Nivea product darkened the color of his penis and caused him substantial pain throughout the day. (*Id*. at 44:17-25, 45:19-24.) Plaintiff experienced bleeding from his penis within the first few months of using the Nivea product. (*Id*. 46:9-23, 48:13-18.) Notwithstanding these anatomical maladies, he continued to use the Nivea product and suspected that a sexually transmitted disease ("STD") may be causing the pain. (Plaintiff's Cross-Motion for Summary Judgment ("Pl. Cross-Motion") at 3, Dkt. Entry No. 83.)

The first time that Plaintiff sought medical attention for these infirmities was during a visit to Gouverneur Health Medical Center ("Gouverneur"). (*Id*. at 49:6-16.) Plaintiff did not mention his use of the Nivea product to the treating physician at Gouverneur, but he was tested for an STD while there. (*Id*. at 50:10-22.) Although the STD test proved negative, the treating physician opined that Plaintiff's injuries may be the result of his sexual activity. (*Id*. at 50:25-51:3, 51:18-52:11.)

Prior to and during Plaintiff's use of the Nivea product, he was sexually active with one woman.[1] (*Id*. at 52:12-18.) During that relationship and after using the Nivea product, Plaintiff was diagnosed with a urinary tract infection at Gouverneur. (*Id*. at 54:12-16.) In or about the summer of 2011, doctors at Reston Hospital Center in Virginia diagnosed Plaintiff with prostatitis,

---

[1] Although Plaintiff, in his deposition, purports to have had consistent sexual intercourse with only one woman prior to and during his use of the Nivea product, the Gouverneur medical records, as noted below, indicate that he engaged in unprotected sex with two female partners in January 2013. (Gouverneur Medical Records, Exhibit I, Dkt. Entry No. 80.)

which is swelling and inflammation of the prostate gland. (*Id*. at 71:4-9.) Plaintiff also stated that he suffered from hypospadias, which is a male birth defect in which the opening of the urethra that carries urine from the body is located on the underside of the penis instead of the tip. (*Id*. at 84:19-25; Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem. of Law") at 8, n. 1, Dkt. Entry No. 80.) He was aware of the fact that his hypospadiac penile anatomy made him more susceptible to infection. (Pl. Dep. at 85:12-16.) Plaintiff further admitted that doctors informed him that the injuries he sustained may have been sexually transmitted by the woman with whom he had been sexually active at the time of his Nivea product use. (*Id*. at 94:22-95:11.)

Plaintiff is not certain whether he had been tested for sensitivity to any of the ingredients that comprise the Nivea product, but believes that he had been because physicians allegedly narrowed the provenance of his injuries to use of the Nivea product. (*Id*. at 117:18-118:2, 118:21-119:6.) Plaintiff characterized the frequency of his genital pain as monthly. (*Id*. at 121:23-122:2.) He further described the pain as occurring randomly and lasting for either days or weeks at a time with inconsistent levels of severity. (*Id*. at 122:3-5, 124:1-11, 140:8-23.) Plaintiff did not notice if the severity of the pain correlated to his use of the Nivea product. (*Id*. at 141:4-7.) The burning sensation that Plaintiff experienced after his first use of the Nivea produce subsided in 2013. (*Id*. at 141:13-142:12.) Plaintiff also admitted to using other body washes prior to using the Nivea product. (*Id*. at 145:4-10.) Plaintiff claims that his injuries prevented him from working, engaging in sexual activity, exercising, eating, and sleeping. (*Id*. at 149:2-9.)

Plaintiff worked intermittently as a film and television production assistant in the summer of 2013. (*Id*. at 13:1-13.) Plaintiff stated that he was unable to work from the spring of 2011 to the summer of 2013 due to the injuries sustained by the Nivea product and, therefore, lost wages.

(*Id*. at 13:14-18, 17:13-16.) However, he was not able to produce a calculation or estimate of his lost wages during that time period. (*Id*. at 17:20-18:22.)

Plaintiff now claims that his injuries are the legal proximate result of the use of the Nivea product and asserts the following three causes of action: (1) strict products liability; (2) negligence; and (3) misrepresentation. (Am. Compl. at ¶ 3.) Plaintiff specifically alleges that Defendant's defective manufacture and design of the Nivea product, negligent selection and mixture of dangerous ingredients, failure to test the product on male subjects with various penile anatomies, failure to warn of the dangers attendant to the Nivea product's use, and negligent marketing and advertising of the Nivea product's functions proximately caused Plaintiff's injuries. (*Id*.) Defendant counters that Plaintiff has not proffered any factual or expert evidence to show that the Nivea product's ingredients were foreseeably harmful or that his penile infirmities were proximately caused by the use of the Nivea product. (Def. Mem. of Law at 1.)

## DISCUSSION

### I. Summary Judgment Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (internal citation omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal citations and quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

In reviewing the complaint, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the amended complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). While the heightened pleading standards set by *Twombly* and *Iqbal* are not necessarily dispensed with in considering *pro se* submissions, the court still must construe *pro se* complaints liberally. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nevertheless, this liberal construction requirement does not absolve a *pro se* plaintiff of the obligation to "'plead sufficient facts to state a claim that is plausible on its face.'" *Chukwueze v. NYCERS*, 891 F. Supp.2d 443, 450 (S.D.N.Y. 2012) (quoting *Bodley v. Clark*, 11 Civ. 8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012)). Because Plaintiff is a *pro se* litigant, the Court, in deciding this motion, has construed Plaintiff's papers broadly and interpreted them to raise the strongest arguments suggested. *Weixel v. Board of Education of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002).

## II.  Choice of Law

"In a diversity action, a district court looks to the choice-of-law principles in the forum state." *Cacciola v. Selco Balers, Inc.*, 127 F. Supp.2d 175, 184 (E.D.N.Y. 2001). Here, neither party disputes that New York law should apply to the instant action. (*See generally* Compl.; Pl.'s Opp'n; Def.'s Mem.) "Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v.*

*Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (citing *Guar. Trust Co. v. York*, 326 U.S. 99, 108-09 (1945)). In this case, Plaintiff is a resident of New York, and Defendant is a corporation from Connecticut, and the Court has jurisdiction based on diversity of citizenship, thus, the New York choice-of-law rules apply. (*See* Notice of Removal ¶¶ 3, 4, 6.) "Under New York law, controlling effect must be given to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *DiBartolo v. Abbott Labs.*, 2012 WL 6681704, at *5 (S.D.N.Y. Dec. 21, 2012) (internal quotations omitted). Here, Plaintiff bases his claims on New York law and events that occurred in New York. He does not argue that any other state law should apply. Therefore, the Court applies New York substantive law.

### III. Strict Products Liability

Under New York law, a claim of strict products liability requires a showing of a product defect. *Kosmynka v. Polaris Industries, Inc.*, 462 F.3d 74, 86 (2d Cir. 2006). Specifically, a consumer has the "'burden to show that *a defect* in the product was a substantial factor in causing the injury.'" *Id*. (emphasis included) (quoting *Fritz v. White Consolidated Industries, Inc.*, 306 A.D.2d 896, 898 (4th Dep't 2003)). "A cause of action in *strict products liability* lies where a manufacturer places on the market a product which has *a defect* that causes injury." *Id*. (emphasis included) (internal quotation marks and citations omitted). Moreover, in order to proceed on a strict products liability claim in New York "'in the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants.'" *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 (2d Cir. 2006) (quoting *Speller v. Sears, Roebuck and Co.*, 100 N.Y.2d 38, 41 (2003)).

Defendant argues that the medical evidence fails to show that the Nivea product was a contributing factor to the various ailments that Plaintiff suffered. Specifically, with reference to the Gouverneur Hospital medical records, Defendant contends that Plaintiff's injuries were not caused by use of the Nivea product, but rather because: (1) he engaged in unprotected sex with two different female partners on an intermittent basis; (2) Plaintiff suffers from hypospadias, which renders him more susceptible to infection; and (3) he was diagnosed with possible prostatitis and a urinary tract infection. (Def. Mem. of Law at 7-8.)

Thus, to overcome Defendant's argument and survive summary judgment on the strict products liability claim, Plaintiff had to come forward with competent evidence that excluded the alternative causes proffered by the medical evidence as the actual etiology of Plaintiff's injuries. *See Speller*, 100 N.Y.2d at 42 (holding that, where the defendants argued that the fire in question had been caused not by their refrigerator's wiring, but rather by the plaintiff's stove, "[i]n order to withstand summary judgment, plaintiffs were required to come forward with competent evidence excluding the stove as the origin of the fire"). Here, Plaintiff fails to present competent evidence excluding the unprotected sex, hypospadias, and the possible prostatitis and urinary tract infection as viable origins of his injuries. It is undisputed that on August 5, 2009, less than two years prior to his use of the Nivea product, Plaintiff visited Gouverneur and complained of itching in his genital area following unprotected sex with a female partner three weeks prior. (Gouverneur Medical Records, Exhibit I, Dkt. Entry No. 80.) The treating physician determined that Plaintiff may have been exposed to a venereal disease and identified chlamydia as a possible diagnosis. (*Id.*)

It is similarly undisputed that, on June 9, 2011, approximately three months after first using the Nivea product, Plaintiff returned to Gouverneur Hospital complaining of painful urination and

informed the treating physician that, although he normally used protection during sexual intercourse, he had recently engaged in unprotected sex. (*Id*.) Six days later, Plaintiff visited Gouverneur Hospital again with complaints of continual burning to his genitals and the treating physician surmised that Plaintiff may be suffering from a urinary tract infection and concluded that chlamydia remained a distant possibility. (*Id*.) On January 22, 2013, Plaintiff returned to Gouverneur once again complaining of painful urination. (*Id*.) During this visit, Plaintiff informed the treating physician that he had unprotected sex with two different female partners within the preceding three months. (*Id*.)

The medical records contain no reference to Plaintiff's use of the Nivea product. Moreover, Plaintiff has not adduced any affirmative factual, medical, or scientific evidence in support of his claim that the Nivea product must have had a manufacturing defect. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's strict products liability claim is granted and Plaintiff's cross-motion for summary judgment as to this claim is denied.

## IV. Negligence

"A cause of action in *negligence* will lie where it can be shown that a manufacturer was responsible for *a defect* that caused injury, and that the manufacturer *could have foreseen the injury*." *Kosmynka*, 462 F.3d at 86 (emphasis included) (internal quotation marks and citations omitted). In New York, the plaintiff bears the burden of establishing that a defect in the product that is the subject of an action sounding in negligence was a substantial factor in causing the injury. *Sita v. Danek Medical, Inc.*, 43 F. Supp.2d 245, 252 (E.D.N.Y. 1999) (internal quotation marks and citations omitted).

The basis for Plaintiff's negligence claim is that Defendant's "selection and mixture of dangerous ingredients" in the Nivea product, its failure to test the Nivea product on male subjects

9

with varying penile anatomies, and its failure to adequately place warning labels on the Nivea product rendered it unfit for consumer use. (Am. Compl. at ¶ 3.) Plaintiff's only basis for these assertions is that he suffered burning several weeks after first using the Nivea product and intense bleeding several weeks thereafter. (Pl. Dep. at 40:7-41:3, 42:5-7, 46:9-23, 48:13-18.) However, Plaintiff has not proffered any evidence that Defendant was responsible for a specific defect in the manufacture of the Nivea product that caused Plaintiff's injuries.

In order to survive this motion for summary judgment, Plaintiff must carry the burden of proof that the Nivea product proximately caused the burning and bleeding to his genitalia. *See Sita*, 43 F. Supp.2d at 252. What caused Plaintiff's penile injuries ultimately is a medical question; however, Plaintiff does not submit any expert reports or scientific analysis showing that the Nivea product was a contributing factor to his injuries. *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (finding that the cause of plaintiff's complex bone injury constituted a medical question that extended "beyond the sphere of the ordinary juryman and required expert testimony").

Furthermore, Plaintiff does not provide any evidence eliminating his episodes of unprotected sex and the urinary tract infection as contributing factors to his injuries. "The existence of a defect may be inferred by circumstantial evidence when the product does not perform as intended and plaintiff's proof excludes the possibility of other causes." *Gilks v. Olay Co., Inc.*, 30 F. Supp.2d 438, 443 (S.D.N.Y. 1998). Defendant correctly notes that expert testimony is required to establish a causal nexus between the Nivea product's chemical composition and Plaintiff's injuries. (Def. Mem. of Law at 4.) Indeed, in case such as this, where Plaintiff's injuries have "multiple potential etiologies, expert testimony is necessary to establish causation[.]" *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004). Here, Plaintiff fails to proffer any expert testimony.

Because Plaintiff's proof does not exclude the possibility that his other medical ailments contributed to and/or caused his penile injuries, his negligence claim is dismissed.

## V. Failure to Warn[2]

Plaintiff's failure to warn claim is predicated on negligence. (Am. Compl. at ¶ 29.) "In order to establish a *prima facie* case for failure to warn under New York law, a plaintiff must show the following: (1) the manufacturer had a duty to warn; (2) the manufacturer breached the duty to warn in a manner that rendered the product defective, *i.e.*, reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered loss or damage." *Bee v. Novartis Pharmaceuticals Corp.*, 18 F. Supp.3d 268, 282-83 (E.D.N.Y. 2014). In bringing a suit based upon a failure to warn under New York law, "[t]he plaintiff has the burden of proving that a defect exists and that this defect is the proximate cause of the plaintiff's injury." *Ohuche v. Merck & Co., Inc.*, 903 F. Supp.2d 143, 149 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

Summary judgment is deemed appropriate where a plaintiff has failed to introduce any evidence that a manufacturer knew or should have known of the danger at issue. *Bee*, 18 F. Supp.3d at 283. "When evaluating failure to warn liability, a court must conduct an intensely fact-specific analysis including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause." *Id*. (citations and internal quotation marks omitted).

---

[2] Although Defendant contends that Plaintiff's failure to warn claim must be disregarded as improperly raised for the first time in his opposition papers, the Court liberally construes *pro se* Plaintiff's negligence claim as encompassing a cause of action for failure to warn. (*See* Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def. Opp. to Cross-Motion") at 2, Dkt. Entry No. 84; Am. Comp. at ¶ 3.) The negligence portion of the amended complaint specifically includes the language, "Beiersdorf *failed to provide adequate warnings* on their NIVEA FOR MEN product which would've informed the Plaintiff of dangers of which an ordinary person might not be aware." (Am. Compl. at ¶ 3.) (emphasis added.)

Plaintiff contends that, because the Nivea product does not display a warning or precaution about the lack of toxicological testing on males with hypospadiac genitalia, Defendant failed to warn Plaintiff of the dangers inherent in the product's use. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") at 9-10, Dkt. Entry No. 81.) Defendant counters that Plaintiff has failed to demonstrate a causal link between the Nivea product and his injuries. (Defendant's Reply Memorandum of Law ("Def. Reply") at 4, Dkt. Entry No. 82.)

Even assuming, *arguendo*, that Plaintiff satisfied the first two elements of a failure to warn, Plaintiff does not satisfy the third element because, as discussed above, he has not proffered any evidence that the use of the Nivea product was the proximate cause of his injuries. Furthermore, Plaintiff has not presented any evidence that Defendant knew, or should have known, that the Nivea product would cause burning and bleeding to hypospadiac genitalia. It is well settled under New York law that "a manufacturer cannot insure against all injuries that arise from the use of its products." *Hollman v. Taser International Inc.*, 928 F. Supp.2d 657, 675 (E.D.N.Y. 2013); *see Micallef v. Miehle Co., Division of Miehle-Goss Dexter, Inc.*, 39 N.Y.2d 376, 386 (1976). Plaintiff has not submitted any published studies, medical reports or other evidence that would have placed Defendant on notice that the use of the Nivea product could contribute to injuries to males with a hypospadiac penile anatomies. Similarly, even construing the facts in the light most favorable to Plaintiff, his knowledge of his hypospadiac penile anatomy and its susceptibility to infection constitutes knowledge of the danger inherent in using various gels and creams. "A defense to liability for failure to warn exists when the injured party had actual knowledge of the danger." *Henry v. Rehab Plus Inc.*, 404 F. Supp.2d 435, 442 (E.D.N.Y. 2005). Plaintiff's knowledge of his anatomical condition nullifies his failure to warn claim. Accordingly, Defendant's motion for

summary judgment on the failure to warn claim is granted and Plaintiff's cross-motion for summary judgment as to this claim is denied.

## VI. Negligent Misrepresentation

Under New York law, in order to state a claim for negligent misrepresentation, a plaintiff must establish:

> [T]hat the defendant owed him or her duty, as a result of a special relationship, to provide him or her with correct information; (2) that the defendant made a false representation that he or she should have known was incorrect; (3) that the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) that the plaintiff intended to rely and act upon such information; and (5) that the plaintiff reasonably relied on the information to his or her detriment.

*Fagan v. AmerisourceBergen Corp.*, 356 F. Supp.2d 198, 219 (E.D.N.Y. 2004). "In order to establish a prima facie case of negligent misrepresentation, a plaintiff must show reliance upon a false statement or material misrepresentation or omission made by the defendant to the plaintiff." *Id.* Moreover, the plaintiff must also show that the alleged misrepresentation caused the injury. *See Amusement Industry, Inc. v. Stern*, 786 F. Supp.2d 758, 778 (S.D.N.Y. 2011) (recognizing the causation requirement for a negligent misrepresentation claim). For the same reasons set forth in the preceding sections, Plaintiff failed to establish the element of causation. Accordingly, Defendant's motion for summary judgment with respect to the negligent misrepresentation claim is granted and Plaintiff's cross-motion for summary judgment is denied.

## VII. Spoliation

Since Defendant's motion for summary judgment has been granted with respect to all of Plaintiff's claims, it is unnecessary for the Court to reach the issue of spoliation as it is moot.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted in its entirety and Plaintiff's cross-motion for summary judgment is denied in its entirety. Accordingly, this action is dismissed in its entirety, with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2016

                                                  /s/
                                      DORA L. IRIZARRY
                                           Chief Judge